UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COMMUNITY CARE, L.L.C** | **CIVIL ACTION** |
| **VERSUS** | **NO: 05-3768** |
| **MICHAEL O. LEAVITT,**<br>**Secretary of the Department**<br>**of Health and Human Services** | **SECTION: "K"(1)** |

## ORDER AND REASONS

Before the Court are Cross-Motions for Summary Judgment (Rec.Doc.Nos. 8 &15) brought respectively by Plaintiff Community Care, L.L.C. ("Community Care") and Defendant Michael O. Leavitt, Secretary of the United States Department of Health and Human Services ("Secretary"). In this administrative appeal, Plaintiff alleges that it is owed a certain sum of money because the Secretary applied the incorrect payment methodology in remunerating Plaintiff for services rendered at its Skilled Nursing Facility ("SNF"). After reviewing the pleadings, memoranda, and relevant law, the Court finds Defendant's motion has merit and hereby grants summary judgment in its favor for the reasons assigned below.

1

## I. INTRODUCTION

This administrative appeal concerns a dispute over the alleged misapplication of a less favorable Medicare payment methodology used to compensate Plaintiff Community Care for skilled nursing services rendered at an SNF. Specifically, Plaintiff seeks this Court's review of the final administrative decision by the Administrator of the Centers for Medicare and Medicaid Services ("CMS"), which held that CMS's fiscal intermediary[1] properly employed the Prospective Payment System ("PPS") instead of a cost based methodology when remunerating Community Care for services it provided at its SNF.[2]

---

[1] A fiscal intermediary is "an entity that has a contract with CMS to determine and make Medicare payments for Part A or Part B benefits payable on a cost basis and to perform other related functions." 42 C.F.R. § 400.202.

[2] Reversing the decision of the Provider Review Reimbursement Board ("PRRB"), the Administrator found that Community Care should have been reimbursed under the PPS rather than the cost-based methodology, reasoning that the SNF is a separate provider whose cost-reporting period began after the July 1, 1998, cut-off date.

## II. DISCUSSION

### A.  Standard of Review

Plaintiff seeks judicial review of the Secretary's decision pursuant to 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1877. The standard of review applicable in this context is set forth by the Administrative Procedure Act, which limits judicial review to the question of whether the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *see also Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 325 (5th Cir. 1984).

### B.  The Medicare Reimbursement System

Title XVIII of the Social Security Act established the Medicare program,[3] which provides for "federal reimbursement of medical care for the aged and certain disabled persons." *Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 318 (5th Cir. 1984) (*citing* 42 U.S.C. § 1395c); *see also Prof'l Rehabilitation Outpatient Servs v. Health Care Fin Admin*, 2001 WL 1910296, at *1 (S.D. Tex. Dec. 7, 2001). In implementing this federal health insurance plan, the Secretary of the Department of Health and Human Services enters into contracts with those medical facilities that

---

[3] 42 U.S.C. §§ 1395a-1395xx.

qualify as "providers of services"[4] under federal law. *Sun Towers*, 725 F.2d at 318. Indeed, such a contract is a prerequisite to Medicare reimbursement. *Id.* Thoseese health care institutions that qualify as providers render certain medical services to the Medicare program's beneficiaries, and in turn, receive payment by the federal government for their "reasonable costs"[5] incurred. 42 U.S.C. § 1395f(b). This dispute involves the Secretary's decision to apply the PPS reimbursement methodology as opposed to a cost based methodology in compensating

---

[4] The Medicare statutes provide that

> [t]he term "provider of services" means a hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, or a home heath agency...An entity is an authorized Medicare provider by virtue of a contract, called an 1866 agreement, between it and the Secretary. Such contracts arise under § 1866 of the Social Security Act, 42 U.S.C. § 1395cc.

42 U.S.C. § 1395x(u).

[5] The Honorable Judge Hittner of the Southern District of Texas described Medicare's concept of "reasonable costs" as follows:

> "Reasonable costs" include certain accrued costs for which a provider has not actually expended funds during the pertinent cost reporting period. 42 C.F.R. §§ 413.100(c)(1) (1995), § 413.24(b)(2) (1986). One type of such accrued costs is accrued liability related to owner's compensation for services performed during a cost reporting period. *Id.* § 413.100(c)(2)(iv) (1995). Medicare regulations provide that a "reasonable allowance of compensation for services of owners is an allowable cost provided that the services are actually performed in a necessary function." *Id.* § 413.102(a) (1986). "Reasonable" means "such an amount as would ordinarily be paid for comparable services by comparable institutions." *Id.* § 413.102(b)(2) (1986).

*Professional Rehabilitation Outpatient Services v. Health Care Financing Admin*, 2001 WL 1910296, at *1 (S.D. Tex. Dec. 7, 2001).

Community Care for its "reasonable costs" incurred in rendering SNF services during April 1999.

**C.     Determination of "Reasonable Costs" for SNFs as Amended by the Balanced Budget Act of 1997 - From a Cost Based Methodology to a Prospective Payment System**

With respect to Medicare reimbursement, the Secretary is ultimately charged with the duty to promulgate regulations "establishing the method or methods to be used, and the items to be included, in determining such costs" 42 U.S.C. § 1395x(v)(1)(A).[6] While the Secretary is given broad discretion in establishing the appropriate Medicare reimbursement methodology, this authority was modified with respect to SNFs with the passage of the Balanced Budget Act of 1997. 28 U.S.C. § 1395yy(e). The new system was enacted for SNFs in order to control Medicare spending, so that "[u]nder PPS, skilled nursing facilities receive fixed, predetermined rates for each day of care." *New GAO Report Examines Medicare PPS Effects on Nursing Homes*, 8 No. 1 Cal. Health L. Monitor 4 (2000). Under the formerly employed cost based system, SNFs benefitted from inflating costs by providing arguably unnecessary ancillary services, and the "PPS attempted to create incentives for providers to control their daily costs and deliver care more efficiently." *Id.*

---

[6] As the Fifth Circuit noted in *Sun Tower*, the statutory charge to the Secretary to pay for medical services under the Medicare program is very broad. 725 F.2d at 325 ("Medicare statute sets forth only the broadest definitional parameters [for reasonable cost]"). That is, the Secretary is to pay for "reasonable costs" of services, which is statutorily defined as "the cost incurred, excluding therefrom any part of incurred costs found to be unnecessary in the efficient delivery of needed health services..." 42 U.S.C. § 1395x(v)(1)(A);

Transitioning from cost based payment system to a PPS, the Secretary promulgated rules which provided that any facility seeking reimbursement for services rendered after July 1, 1998, would be under the PPS. 42 C.F.R. § 413.1.[7] A transition exception was created so that those existing entities whose cost reporting period began before the cut-off date, but extended beyond July 1, 1998, could receive cost based reimbursement for the entire period. *Id.* This dispute is centered around whether Community Care's SNF should receive the benefit of this exception.

**D.     The SNF at Community Care**

Plaintiff Community Care added a SNF floor to its hospital in 1999. On April 1, 1999, the floor was certified by Medicare as a skilled nursing facility, receiving the number "19-5475" as its own provider number.[8] On April 10, 1999, it admitted its first skilled nursing patient. Community Care selected its cost-reporting period as beginning on April 1, 1998, and ending on April 30, 1999, and submitted to a fiscal intermediary of CMS a cost report in order to receive

---

[7] Federal regulation provides:

> Except as specified in paragraph (g)(2)(ii) of this section, the amount paid for services furnished in cost reporting periods beginning before July 1, 1998, is determined on a reasonable cost basis or, where applicable, in accordance with the prospectively determined payment rates for low-volume SNFs established under section 1888(d) of the Act, as set forth in subpart I of this part.

42 C.F.R. § 413.1; *see also* 42 U.S.C. § 1395yy(e)(1)-(2).

[8] The Community Care hospital has its own provider number of "19-4056." *See* A.R., at p. 6 (Rec.Doc.No. 5).

payment for medical services rendered at its SNF. Plaintiff's cost reporting period began before the July 1, 1998, cut-off date, but the SNF did not become certified until well after the cut-off date. The task of the Court is to ultimately determine the applicable reimbursement methodology for services rendered at Community Care's SNF during April 1999. The amount in controversy is $335,465.00. *See* A.R., at p. 69 (Rec.Doc.No. 5).

### E.  Procedural History

Community Care's cost report was initially accepted by CMS's fiscal intermediary Trispan Health Services ("Trispan"). Pursuant to federal regulations,[9] Trispan initially determined that the PPS payment methodology would apply to Community Care's SNF. *See* A.R. 23. Upon an indication from CMS on August 20, 2001, that a cost-based methodology should apply to the SNF because its fiscal year cost report began on April 1, 1998, Trispan reversed its decision and applied the cost-based methodology. *See* A.R. 24. However, on October 1, 2001, CMS indicated that the SNF cost-reporting period began after July 1, 1998, and Trispan, thus, withdrew its reversal. *Id.*

Community Care appealed the final decision to a Provider Review Reimbursement Board

---

[9] After receiving the provider's cost report, the fiscal intermediary must provide written notice reflecting the intermediary's determination of the total amount of reimbursement due the provider. *See* 42 C.F.R. § 405.1803.

("PRRB") in accordance with federal statutes.[10] The PRRB held that a cost based methodology was warranted, reasoning the following:

> The statute, 42 U.S.C. § 1395yy(e), provides for the implementation of a prospective payment system for cost reporting periods beginning on or after July 1, 1998. The cost reporting period under appeal in this case began prior to that date, and, therefore, the SNF was not subject to PPS during the FY ended April 30, 1999. It is undisputed that the Provider admitted its first Medicare patient on April 10, 1999. Pursuant to PRM §2414.5, a multi-facility complex which includes hospitals and hospital-based SNFs is required to submit one cost report. Provider Reimbursement Manual (CMS Pub. 15-2) §102.1 permits providers to file 13-month cost reports to conform to the Medicare cost reporting period it wishes to use. In this case, the Provider had chosen its cost reporting period to conform to the requirements of the manual. The SNF admitted its first Medicare patient one month before the end of the cost reporting period April 1, 1998 through April 30, 199. Since the cost reporting period under dispute began prior to July 1, 1998, SNF PPS was not applicable to the period. Consequently, the Provider should have been reimbursed on a cost basis.

---

[10] Federal statute allows for:

> [a]ny provider of services which has filed a cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board (hereinafter referred to as the "Board") which shall be established by the Secretary...

42 U.S.C. § 1395oo(a). Such a hearing may be held if the provider:

> is dissatisfied with a final determination of the organization serving as its fiscal intermediary pursuant to section 1395h of this title as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such cost report.

42 U.S.C. § 1395oo(a)(1)(A)(i).

*See* A.R., at p. 24-25.

Exercising the authority granted by federal law to review decisions of PRRBs,[11] the CMS Administrator on behalf of the Secretary reversed the decision of the PRRB on June 7, 2005, reasoning that Section 102 of the Medicare Provider Reimbursement Manual ("PRM") necessitates that:

> [w]hile a hospital-based SNF has the same cost reporting year end as the hospital, the beginning of the cost reporting period can be different in the case of a newly certified SNF provider. In that instance, the start of the cost reporting period is necessarily controlled by when the Provider first rendered patient care services which could be covered by Medicare.

*See* A.R., at p. 6-7.

Seeking judicial review of the Administrator's decision, Community Care instituted the instant action on August 11, 2005. *See* Compl. (Rec.Doc.No. 1). Because this is an administrative appeal, judicial review is limited to the administrative record. *See Buttrey v. U.S.*, 690 F.2d 1170 (5th Cir. 1982) (*citing Camp v. Pitts*, 411 U.S. 138, 143 (1973)).

---

[11] 42 U.S.C. § 1395oo(f)(1) provides that "[a] decision of the [PRRB] shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the [PRRB]'s decision, reverses, affirms, or modifies the [PPRB]'s decision."

**F.     SNF as a Separate Provider**

The Deputy Administrator, acting on behalf of the Secretary, based her decision on an interpretation of Section 102 of the Medicare Provider Reimbursement Manual ("PRM"). In particular, the Deputy Administrator cites Section 102.1 of the PRM, which states:

> In case of a newly constructed provider that enters the Medicare program during its initial business year, and in the case of providers that re-enter the Medicare program after a change of ownership, provider operations are considered to commence for cost reporting purposes when the first patient is admitted as an inpatient or receives outpatient services (hospital or SNF)[; therefore], a provider's initial cost reporting period may not start before the beginning of the month in which it first renders patient care services which could be covered under the program.

*See* Mot. Summ. J., Exhibit 1 (Rec.Doc.No. 15); A.R., at p. 6.

The Deputy Administrator uses the above citation to support a finding that the Community Care SNF "is a separate entity from the hospital under the Medicare program." A.R., at p. 6. As a "newly constructed provider," the Deputy Administrator found that cost reporting period could not start until April 10, 1999, the day the Community Care SNF first rendered patient care. Because the cost reporting period thus began after the July 1, 1998 cut-off date, the Deputy Administrator held that Community Care should have been reimbursed according to the PPS payment methodology.

On the other hand, Plaintiffs, citing section 2414.5 of the PRM and reiterating the conclusion of the PRRB, argue that the requirement that a multiple provider institution such as Community Care only submit one cost report for the hospital and SNF, supports a finding that

the SNF is a subprovider and not a separate provider. *See* Mot. Summ. J., at p. 9 & Exhibit B (Rec.Doc.No. 8). That is, because the Community Care had to submit one cost report for which period began on April 1, 1998, Plaintiff was entitled to be reimbursed under a cost based methodology for its SNF services being that cost report period began prior to the July 1, 1998, cut-off date.

The ultimate legal question before the Court of whether Plaintiff is entitled to a PPS or cost based payment methodology turns on whether Community Care's SNF is a separate provider or a subprovider under the Medicare program. The Deputy Administrator based her decision on an interpretation of the provisions of the PRM, finding that the "hospital-based SNF has is a separate entity from the hospital under the Medicare program," and thus, "the Provider's initial cost reporting period cannot e found to begin prior to July 1, 1998 and the Provider can only be reimbursed under the SNF PPS." *See* A.R., at p. 6-7 (Rec.Doc.No. 5).

In reviewing agency interpretations, a court cannot overturn an agency's construction of a statute unless the decision is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984); *Texas Coalition of Cities for Utility Issues v. Federal Communications Commission*, 324 F.3d 802, 807 (5th Cir. 2003). With respect to agency interpretation of its own regulation promulgated through federal rulemaking procedures, courts must give the interpretation "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Ali v. Gonzales*, 435 F.3d 544, 546 (5th Cir. 2006)(*quoting Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).

The deference required under *Seminole Rock* is of a higher degree than that required

under *Chevron*. *Paradissiotis v. Rubin*, 171 F.3d 983, 987 (5th Cir. 1999)(*citing Consarc Corp. v. United States Treasury Dept., Office of Foreign Assets Control*, 71 F.3d 909, 914 (D.C. Cir. 1995); *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994)).

However, the Deputy Administrator, in fact, based her findings on an interpretation of Section 102 of the PRM. This provision is neither a part of a federal statute or regulation, but rather, is an agency manual. The Fifth Circuit has held that the PRM itself is "an interpretive guideline"[12] to which *Chevron* or *Seminole Rock* deference is not owed, and that the manual should merely be considered by courts as "persuasive at best." *Reliable Home Health Care, Inc. v. Union Cent. Ins.*, 295 F.3d 505, 512 (5th Cir. 2002)(*citing Sta-Home Home Health Agency, Inc. v. Shalala*, 34 F.3d 305, 310 (5th Cir. 1994) (PRM does not carry force and effect of law).

Reviewing the agency's interpretation of the PRM in light of the relative lack of deference afforded to such findings, the Court finds that the provision relied upon by the Deputy Administrator does not, standing alone, support the conclusion that Community Care's SNF is a separate provider. The Deputy Administrator points to the language in Section 102 of the PRM that provides "[i]n the case of a newly constructed provider that enters the Medicare program during its initial business year" to stand for the proposition that Community Care's SNF is a separate provider. There is nothing inherent in the modifying phrase "newly constructed" to

---

[12] Presumably, insofar as the PRM interprets federal Medicare statutes or regulations and such an interpretation and the law referenced is clear, the PRM may be entitled to *Chevron* or *Seminole Rock* deference, as it would be an agency interpretation of federal law. However, the Deputy Administrator relied solely on the provisions of the PRM in creating the inference that Community Care's SNF was a separate provider under the Medicare program; thus, such an interpretation is not afforded *Chevron* or *Seminole Rock* deference.

create the inference that Community Care's SNF is a separate provider as opposed to a subprovider. Indeed, such a reading requires that any new construction after July 1, 1998, that delivers new Medicare services would be separate providers. In other words, the definition of the word "provider" and what constitutes a "subprovider" or "separate provider" is not evident in the PRM, which ultimately undermines the Deputy Administrator's reasoning.

Despite these flaws in the basis for the agency's decision, the Court finds that the statutory and regulatory background of the Medicare program provides sufficient basis for the agency's conclusion, such that the finding that Community Care's SNF is a separate provider is not arbitrary or capricious under the Administrative Procedure Act.

The Medicare statutes provide that [t]he term "provider of services" means a hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, or a home heath agency."

42 U.S.C. § 1395x(u).  Similarly, federal regulations provide that:

> Provider means a hospital, a CAH, a skilled nursing facility, a comprehensive outpatient rehabilitation facility, a home health agency, or a hospice that has in effect an agreement to participate in Medicare.

42 C.F.R. § 400.202.

Under the Medicare program, an SNF must enroll by entering into an agreement with the Secretary, whether or not the SNF is part of a hospital or is freestanding. 42 U.S.C. § 1395cc. Given that an SNF is listed as a "provider of services" coupled with the fact that the SNF must obtain its own unique provider number, it is certainly reasonable to conclude that an SNF is a separate

provider under the Medicare program.

As a "provider of services" under the Medicare program, a skilled nursing facility must meet certain specified requirements, as distinct from a hospital, with regard to provision of services, quality of care, and relationships with other providers. *See* 42 C.F.R. § 483.1, *et seq.* Moreover, federal regulations explicitly provide that for purposes of Medicare, the SNF "is always the entity that participates in the program" for purposes of eligibility, coverage, certification, and payment. 42 C.F.R. § 483.5. Thus, the Court also finds that federal regulations support a finding that an SNF is a separate provider.

Community Care maintains that its SNF is a subprovider because of the requirement that SNFs submit one cost report reflecting services rendered by the hospital and SNF. *See* Opp. Mot. Summ. J. (Rec.Doc.No. 18). Federal regulation provides that a hospital-based SNF "must file a cost report that reflects the shared services and administrative costs of the hospital and any other related facilities in the health care complex." 42 C.F.R. 413.321. The Deputy Administrator addressed this argument reasoning that the "purpose of the multiple complex report is to ensure the appropriate allocation of costs between various component for shared services and administrative costs..." *See* A.R., at fn. 4 (Rec.Doc.No. 5). The implication being that the requiring the submission of only one cost report, while being practically convenient for administrators of the Medicare program and also for the health care complex, does not make a hospital based SNF a subprovider of the hospital. The Secretary's interpretation of this regulation is reasonable in light of the provision's limited application to the submission of cost reports.

The Court finds that the agency's conclusion that Community Care's SNF is a separate

14

provider is supported by federal statute and regulation, and thus, was not arbitrary or capricious. Therefore, as a separate provider, the SNF's cost reporting period did not commence until it first admitted a Medicare patient – April 10, 1999, which is subsequent to the July 1, 1998, cut-off date for cost based reimbursement. Accordingly,

**IT IS ORDERED** that Plaintiff Community Care's Motion for Summary Judgment (Rec.Doc.No. 8) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Michael Leavitt's Motion for Summary Judgment (Rec.Doc.No. 15) is hereby **GRANTED**.

New Orleans, Louisiana, on this __27th__ day of February, 2007.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**